UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| VIVINT LOUISIANA, LLC | CIVIL ACTION NO. 15-0821 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| THE CITY OF SHREVEPORT, ET AL. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is a Motion for Partial Summary Judgment (Record Document 24) filed by the Plaintiff, Vivint Louisiana, LLC ("Vivint"), and a Motion for Summary Judgment (Record Document 30) filed by the Defendant, the City of Shreveport ("the City"). Vivint seeks partial summary judgment that the City's "no-solicitation" ordinance, Section 42-277 of the Shreveport Municipal Code, is facially unconstitutional. See Record Document 24. Conversely, the City seeks summary judgment that Section 42-277 of the Shreveport Municipal Code is a constitutional regulation of commercial speech. See Record Document 30. For the reasons set forth below, Vivint's motion is **DENIED** and the City's motion is **GRANTED**.

**BACKGROUND**

Vivint sells and markets its residential security systems and home automation packages and services through direct sales, or door-to-door solicitation. See Record Document 24-1 at ¶ 1. It provides services to nearly 4,000 customers in Louisiana. See Record Document 24-2 at 1. Vivint alleges that it has been unable to carry out its business in Shreveport for the past several years because Shreveport's Municipal Code has a "no-solicitation ordinance," Section 42-277 of the Shreveport Municipal Code ("Section 42-277"). Record Document 24-1 at ¶ 2. Section 42-277 provides:

> Entering private residence without invitation.
>
> It shall be unlawful for any solicitor, peddler, hawker, itinerant merchant or transient vendor of merchandise to go in and upon an private residence in the city, not having been requested or invited to do so by the owner or occupant of such residence, for the purpose of soliciting orders for the sale of goods, wares and merchandise, or for the purpose of disposing of or peddling or hawking such goods, wares and merchandise. Such practice is hereby declared to be a nuisance and punishable as a misdemeanor; provided, however, that the provisions of this section shall not apply to the vending or sale of ice, or soliciting orders for the sale of ice, milk and dairy products, truck vegetables, poultry and eggs, and other farm and garden produce, so far as the sale of the named commodities is authorized by law.

Record Document 30-2.

Vivint further contends that "[w]ere it not for the City's . . . ban, door-to-door solicitation is a lawful activity" and that "[d]oor-to-door solicitation is not, by its nature, misleading." Id. at ¶¶ 3-4. Vivint maintains that the City is attempting to criminalize its rights to conduct door-to-door solicitation within the city limits and that Section 42-277 is an unconstitutional violation of its freedom of expression as protected by the First and Fourteenth Amendments to the United States Constitution and Article I, Section 7 of the Louisiana Constitution. See Record Document 24-2 at 2; Record Document 1 at ¶¶ 3, 8-12.

On September 26, 2014, Vivint "filed this action to enforce its right to solicit customers and conduct business by door-to-door solicitation within the City of Shreveport." Record Document 24-2 at 1; see also Record Document 1. Vivint named both the City and the Office of the State Fire Marshal as defendants. See Record Document 1. On January 16, 2015, Vivint voluntarily dismissed its claims against the Office of the State Fire Marshal, without prejudice. See Record Document 11. Vivint and the City have now filed cross motions for summary judgment. See Record Documents 24 & 30.

**LAW AND ANALYSIS**

**I.       Summary Judgment Standard.**

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." See id. "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir.2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir.2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir.2005).

**II.      Commercial Speech.**

Vivint argues there is no genuine issue of material fact that the City is violating its right to conduct door-to-door solicitation within the Shreveport city limits by enforcing a facially unconstitutional ordnance. See Record Document 24-2 at 3. Conversely, the City contends that Section 42-277 is supported by substantial governmental interests; the

ordinance directly and materially advances such interests; and the ordinance is narrowly tailored. See Record Document 30. The City, therefore, argues there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law that Section 42-277 is constitutional. See id.

Both parties agree that this case involves commercial speech and the Court's analysis must be guided by Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York, 447 U.S. 557, 100 S.Ct. 2343 (1980). "The First Amendment, as applied to the States through the Fourteenth Amendment, protects commercial speech from unwarranted governmental regulation." Central Hudson, 447 U.S. at 561, 100 S.Ct. at 2349. The protection afforded to commercial speech is lesser than other constitutionally guaranteed expression and "[t]he protection available for particular commercial expression turns on the nature both of the expression and of the governmental interests served by its regulation." Id. at 563, 100 S.Ct. at 2350.

Under Central Hudson, the government may freely regulate commercial speech that concerns unlawful activity or is misleading. See Florida Bar v. Went For It, Inc., 515 U.S. 618, 623-624, 115 S.Ct. 2371, 2376 (1995), citing Central Hudson, 447 U.S. at 563-564, 100 S.Ct. at 2350. "Commercial speech that falls into neither of those categories . . . may be regulated if the government satisfies a test consisting of three related prongs: First, the government must assert a substantial interest in support of its regulation; second, the government must demonstrate that the restriction on commercial speech directly and materially advances that interest; and third, the regulation must be 'narrowly drawn.'" Id. at 624, 115 S.Ct. at 2376, citing Central Hudson, 447 U.S. at 564-565, 100 S.Ct. at 2350-2351. Here, the commercial speech at issue is neither unlawful nor misleading so the

Court will apply the three prong Central Hudson test.

**Substantial Interest in Support of the Regulation**

Under the first prong of the Central Hudson test, the City must assert a substantial interest in support of Section 42-277.  Vivint argues that the City did not allege a government interest in its answer; the ordinance is facially unconstitutional; and its motion for partial summary judgment should be granted.  See Record Document 24-2 at 4.  To the extent the City contends that the interest is protecting residents from crime or sheltering its residents from undue annoyance or nuisance, Vivint argues that these "may constitute legitimate interests, but the ordinance fails constitutional scrutiny." Id. at 4.  Vivint further contends that the plain language of the ordinance "erodes the [City's] . . . belief that the ordinance actually serves as a crime prevention mechanism" because of the "exceptions for door-to-door solicitors engaged in the sale of ice, milk and dairy products, truck vegetables, poultry and eggs, and other farm and garden produce." Record Document 34 at 2. Finally, Vivint challenges the affidavit of Deputy Chief Dwayne Huddleston ("Deputy Chief Huddleston"), which the City submitted in support of its Motion for Summary Judgment.  See id. at 3-4; Record Document 30-3 (Affidavit of Deputy Chief Dwayne Huddleston).  Vivint contends that Deputy Chief Huddleston's affidavit is that of an interested third party attempting to "supplant or interpret legislative intent"; the affidavit is conclusory; and the affidavit contains "no supporting facts and is without any testimony concerning actual personal knowledge" in relation to Deputy Chief Huddleston's attestations concerning the causal connections between Section 42-277 and crime reduction.  Record Document 34 at 3-4.  Vivint asks the Court to ignore the affidavit "as nothing more than self-serving recitations of the arguments of the City." Id.

Here, the Court finds that the City has shown substantial governmental interests in support of Section 42-277, that is, protecting the safety of its residents as well as protecting the privacy of its residents from uninvited solicitors. Despite Vivint's arguments to the contrary, this Court accepts the affidavit of Deputy Chief Huddleston as competent summary judgment evidence. The affidavit is based on personal knowledge and sets forth facts that would be admissible in evidence. See generally C.R. Pittman Const. Co. v. Nat'l Fire Ins. Co. of Hartford, No. 10-30950, 2011 WL 5031414, **3.[1] Deputy Chief Huddleston explained he has been Deputy Chief since 2012; has worked continuously for the Shreveport Police Department since 1984; has worked in areas including Patrol, Investigations, Narcotics, Homicide, and Planning and Research. See Record Document 30-3 at ¶ 1. At least weekly, he reviews information regarding the types of criminal activity occurring within the City of Shreveport. See id. at ¶ 2. Deputy Chief Huddleston, who has

---

[1]In C.R. Pittman Const. Co., the Fifth Circuit reasoned:

> A party's own testimony is often "self-serving," but we do not exclude it as incompetent for that reason alone. See Rushing v. Kan. City S. Ry., 185 F.3d 496, 513 (5th Cir.1999), superseded by Fed.R.Evid. 103(a) on other grounds as recognized in Mathis v. Exxon Corp., 302 F.3d 448, 459 n. 16 (5th Cir.2002) ("[M]erely claiming that the evidence is self-serving does not mean we cannot consider it or that it is insufficient. Much evidence is self-serving and, to an extent, conclusional.") . . . Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 53 (1st Cir.2000) ("[A 'party's own affidavit, containing relevant information of which he has first-hand knowledge, may be self-serving, but it is nonetheless competent to support or defeat summary judgment.'" . . .; Harris v. J.B. Robinson Jewelers, 627 F.3d 235, 239 (6th Cir.2010) ("A court may not disregard evidence merely because it serves the interests of the party introducing it."); . . . . If all "self-serving" testimony were excluded from trials, they would be short indeed.

C.R. Pittman Const. Co., 2011 WL 5031414 at **3.

extensive training including completion of the FBI Law Enforcement Executive Development Academy, further attested:

> I am familiar with Ordinance 42-277, and benefits provided to law enforcement by this Ordinance.
>
> I am aware that criminals approach residences and knock on the door in order to determine whether the resident is home and by doing so they gather information about how to enter the residence then or at some other time. Through my work at the Shreveport Police Department as an investigator investigating criminal activity, as well as my work as a supervisor who is kept aware of volume and types of criminal activity, I know that this is a primary means by which burglaries and other property crimes occur in Shreveport.
>
> The Shreveport Police Department maintains statistics on burglaries, and it is a significant amount of the criminal activity occurring in Shreveport. In 2014, there were 2,095 burglaries reported to the Shreveport Police Department. This is significantly lower than our record number of 6,404 burglaries in 1990. We attribute much of this reduction to our partnership with the community through the creation of a Community Oriented Policing function. . . . We have seen a consistent decline in burglaries since 1990 and credit this partnership. . . . I believe that the door-to-door solicitation ordinance plays a significant part in keeping property crimes at this level. Allowing a consistent influx of strangers into the community on a regular basis would desensitize citizens to immediately reporting people or vehicles which are not known to them, thus reducing the police response in these areas.
>
> Similarly, I am aware that home invasions remain a significant threat to members of our community. I am aware that a common scenario used is that the criminal knocks unannounced on the door of the residence for a fake purpose and then forcibly enters the residence and uses violence and threats of violence to obtain valuables.
>
> . . . A significant reason that the City of Shreveport has in place the door-to-door solicitation ordinance is to assist residents in identifying criminal activity because they know that persons going door-to-door are not salesmen, and this eliminates a significant basis for persona innocently going door-to-door and therefore makes it easier for the citizen to identify suspicious activity. Because citizens are not desensitized to seeing strangers going from house-to-house and approaching homes to locations where they can identify vulnerable locations and people, such activity is more readily identified by the citizens and reported to law enforcement.

> The door-to-door solicitation ordinance is also an important tool for law enforcement, as it limits the number of persons who are innocently moving door-to-door and therefore assists officers in identifying suspicious activity.
>
> If the door-to-door solicitation ordinance was not available then I am certain it would have a significant impact on the effectiveness of law enforcement in preventing criminal activity, including burglaries and home invasion crimes, and will make it more difficult to control criminal activity.

Id. at ¶¶ 2-6, 8-9.

The City's interests in protecting its citizens are apparent from the circumstances of this case. It is well established that a city may regulate solicitation as a necessary step in securing the safety of its citizens. In Breard v. City of Alexandria, La., 341 U.S. 622, 71 S.Ct. 920 (1951), the Supreme Court held:

> Unwanted knocks on the door by day or night are a nuisance, or worse, to peace and quiet. . . .
>
> To the city council falls the duty of protecting its citizens against the practices deemed subversive of privacy and of quiet. A householder depends for protection on his city board rather than churlishly guarding his entrances with orders forbidding the entrance of solicitors. A sign would have to be a small billboard to make the differentiations between the welcome and unwelcome that can be written in an ordinance once cheaply for all homes. The police power of a state extends beyond health, morals and safety, and comprehends the duty, within constitutional limitations, to protect the well-being and tranquility of a community.

Id. at 627, 640, 71 S.Ct. at 924, 931. Deputy Chief Huddleston explained the specific criminal activity the Shreveport Police Department is facing and the community oriented policing initiative in Shreveport, thereby establishing the substantial governmental interest in protecting the privacy of residents and assisting in the protection of the safety of residents. Thus, the City has satisfied the first prong of the Central Hudson test.

**The Restriction on Commercial Speech Directly and Materially Advances the Substantial Interest**

It is undisputed that the City carries the burden of justifying Section 42-277. See Edenfield v. Fane, 507 U.S. 761, 770, 113 S.Ct. 1792, 1800 (1993). "This burden is not satisfied by mere speculation or conjecture; rather, a governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." Id. at 770-771, 113 S.Ct. at 1800 (citations omitted). Vivint argues that the City has not, and cannot, show that door-to-door solicitation is a cause of crime, undue annoyance, or nuisance; thus, the City cannot meet the second prong of the Central Hudson test. See Record Document 24-2 at 5. In sum, Vivint contends that the City cannot and has not shown how Section 42-277 advances the City's alleged substantial interests. See Record Document 35 at 5.

Here, the City has shown that Section 42-277 directly and materially advances the substantial governmental interests of protecting the public safety of its residents as well as protecting the privacy of residents from uninvited solicitors. Section 42-277 is directed to solicitors who are uninvited and unannounced and protects homeowners from uninvited solicitation. As explained by Deputy Chief Huddleston, Shreveport faces significant burglary and home invasion crimes and Section 42-277 deters uninvited individuals from entering private property for the purpose of canvassing the premises to perpetuate crime. See Record Document 30-3 at ¶¶ 4-7. The ordinance likewise directly and materially advances the important law enforcement tool of community oriented policing, which in turns advances public safety and privacy protection of residents. See id. at 4-8. Thus, the City has satisfied the second prong of the Central Hudson test.

**The Regulation Must Be Narrowly Drawn**

Vivint argues that even if the City can satisfy prongs one and two of the Central Hudson test, the City's interests do not require a blanket ban on door-to-door sales in order to satisfy the stated goals of privacy and safety of its citizens. See Record Document 34 at 5. Vivint contends that Section 42-277 is "more extensive than is necessary to serve [the City's] interest" and is not narrowly drawn, as required by the third prong of Central Hudson. Record Document 24-2 at 5. Vivint cites case law purportedly holding that general prohibitions on door-to-door solicitation are overly restrictive and unconstitutional. See id. at 5-7.[2] Vivint also references the Bossier Parish Code of Ordinances, Section 86-2, which was revised in 2014 to end a moratorium on door-to-door solicitations. See id. at 7; Record Document 24-4. The revised Section 86-2 created a permitting process which mandates identification cards and background checks, and bans convicted felons and those convicted of crimes involving deceit, fraud, or dishonesty from being eligible for a door-to-door solicitation permit. See id. Finally, Vivint cites Louisiana Attorney General Opinion No. 08-0098 issued January 29, 2009, which provides:

> You have asked this office to provide our legal opinion concerning the constitutionality of a City of New Iberia ordinance which prohibits all door-to-door solicitations upon private residences.

---

[2]Vivint cites numerous cases as legal authority for its position that (1) a general prohibition on door-to-door solicitation is unconstitutional and (2) courts have rejected crime prevention as a basis for an overly restrictive limitation on commercial speech. See Record Document 24-2 at 5-6. However, only one case cited by Vivint addresses commercial speech. See id., citing Tiffin v. Boor, 672 N.E.2d 200 (Oh. App. 1996). Boor was a criminal matter wherein defendant Boor challenged his criminal conviction for violating provisions of a non-solicitation ordinance. See Boor, 672 N.E.2d 200. Approximately six months after the Boor decision, another Ohio appellate court upheld the constitutionality of an ordinance prohibiting uninvited door-to-door solicitation. See Cleveland Home Improvement Council v. Bedford Hts., 682 N.E.2d 667 (Oh. App. 1996).

> . . .
>
> [T]he current analysis of the U.S. Supreme Court in <u>Central Hudson</u> . . ., and the cases following . . ., regarding the regulation of commercial speech, indicates that an ordinance banning all commercial solicitation would be invalidated as restricting commercial speech more extensively than necessary to achieve the goal of protecting a homeowner's privacy.
>
> . . .
>
> [W]e advise that if the City of New Iberia ordinance prohibiting all door-to-door solicitation is judicially challenged, a court would likely declare the ordinance unconstitutional under the First Amendment.

Record Document 24-5.

The City distinguishes both the Bossier Parish ordinance and Louisiana Attorney General Opinion No. 08-0098. Deputy Chief Huddleston's affidavit outlines the unique public safety issues facing Shreveport. <u>See</u> Record Document 30-3. There is no competent summary judgment evidence before this Court demonstrating that Bossier Parish faces these same issues. Likewise, Louisiana Attorney General Opinion No. 08-0098 sets forth very general legal analysis regarding the City of New Iberia's ordinance. While it appears that no evidence was offered to the Attorney General's Office regarding the substantial governmental interests of New Iberia, it is clear that the Attorney General was not considering the substantial governmental interests of the City of Shreveport.

In <u>Florida Bar</u>, the Supreme Court noted:

> [W]e made clear that the "least restrictive means" test has no role in the commercial speech context. What our decisions require, instead, is a fit between the legislature's ends and the means chosen to accomplish those ends, a fit that is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one whose scope is in proportion to the interest served, that employs not necessarily the least restrictive means but . . . a means narrowly tailored to achieve the desired objective.

<u>Id.</u>, 515 U.S. at 632, 115 S.Ct. at 2380. Under this legal standard, the City is not required

to discover and utilize a less restrictive alternative avenue. Additionally, Vivint has offered no alternative that would adequately address the City's substantial governmental interests. The permitting process in Bossier Parish would not address the City's submitted governmental interests, which this Court has held to be substantial. Moreover, Section 42-277 does not prohibit the sale or demonstration of products or services in the home as long as the salesperson makes an appointment with the resident in advance. The ordinance also does not restrict other means of communication with potential customers such as television, radio, internet, direct mail, billboard advertising, and/or direct telephone solicitation. Section 42-277 is not more extensive than is necessary to serve the City's interests and the City has shown a fit between its interest in regulating commercial speech to protect the privacy and safety of its residents in their homes and the means chosen to accomplish those ends, that is, requiring salespeople to make an appointment before they show up at a resident's door. The fit is reasonable, is proportioned to the interest served, and is narrowly drawn to achieve the City's desired objective. Thus, the Court finds that the City has satisfied the third prong of the Central Hudson test.

## CONCLUSION

Based on the foregoing analysis, this Court holds that the City has satisfied the three prong Central Hudson test. The City asserted substantial governmental interests in support of Section 42-277; the City demonstrated that Section 42-277 directly and materially advances its interests; and Section 42-277 is narrowly drawn.[3] Thus, Section 42-277, which regulates commercial speech, is constitutional and is not a violation of Vivint's

---

[3] As noted by the City, this ordinance was challenged, and upheld, in the state court system in the late 1990s. See Record Document 30-4.

freedom of expression as protected by the First and Fourteenth Amendments to the United States Constitution and Article I, Section 7 of the Louisiana Constitution.

Accordingly,

**IT IS ORDERED** that the Motion for Partial Summary Judgment (Record Document 24) filed by Vivint is **DENIED** and the Motion for Summary Judgment (Record Document 30) filed by the City is **GRANTED**.

A Judgment consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 30th day of September, 2016.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE